# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| In re: FIRSTENERGY CORP. SECURITIES LITIGATION<br><br>This Document Relates To:<br><br>ALL ACTIONS. | Case No. 2:20-cv-03785-ALM-KAJ<br><br><u>CLASS ACTION</u><br><br>Chief Judge Algenon L. Marbley<br><br>Magistrate Judge Kimberly A. Jolson |

**DEFENDANTS JONES AND DOWLING'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO COMPEL SECOND RULE 30(B)(6) DEPOSITION OF FIRSTENERGY**

FirstEnergy does not contend it lacked reasonably particular notice of the topics examined during its deposition. Nor does it dispute the relevance of the questions Jones and Dowling posed. Rather, FirstEnergy claims that its lone representative was adequately prepared to testify on every one of the agreed-upon topics. Yet, the deposition transcript—which FirstEnergy largely avoids—demonstrates otherwise. The company glosses over the numerous topics and questions highlighted in Jones and Dowling's initial brief that Ashton could not address.

Because examining Ashton's testimony topic-by-topic only reveals her lack of preparation, FirstEnergy argues instead that "absolute perfection" and "personal knowledge" are not required, and that "testifying aids" are appropriate. These arguments miss the point. The fundamental issue with FirstEnergy's preparation of its sole witness is that it ensured she would do little more than confirm what was stated in the Deferred Prosecution Agreement ("DPA"). Given the extensive preview Jones and Dowling provided of the subjects of their examination, the company's pervasive failure to provide substantive answers is unjustified and should be remedied by a second deposition on all agreed-upon topics—not just the single topic FirstEnergy has agreed to reopen.

## LAW AND ARGUMENT

I.    **FirstEnergy's Rule 30(b)(6) Testimony Was Inadequate and Its Strained Attempts To Add "Context" To Its Failure to Answer Substantive Questions Are Meritless.**

FirstEnergy deflects from the lack of substantive testimony at its deposition by arguing that "absolute perfection" is not required of a designee. (Opp'n 10.) But this is not an instance where the witness was unable to answer questions a "few times" here or there, as was the case in *Lieber v. Wells Fargo Bank, N.A.*, 2017 WL 3923128, at *6 (N.D. Ohio Sept. 7, 2017), or offered the "occasional 'I don't know,'" as in *Lebron v. Royal Caribbean Cruises, Ltd.*, 2018 WL 4258269, at *9 (S.D. Fla. Sept. 6, 2018) (citation omitted). To the contrary, Ashton repeatedly admitted she was unable to provide answers on the topics FirstEnergy agreed would be covered.



Among other items, Ashton could not provide ▮▮▮ or testify to ▮▮▮ (Br. 8-10.) She was unable to say whether ▮▮▮, did not know ▮▮▮, and was not prepared to discuss ▮▮▮ (*Id.* at 10-12.) Ashton did not know ▮▮▮, or the company's decision to ▮▮▮. (*Id.* at 12-14.) And she could not provide ▮▮▮, such as identifying the ▮▮▮ (*Id.* at 14-15.)

FirstEnergy makes virtually no effort to rebut its lack of preparation on this same topic-by-topic basis. The company devotes a ***single*** paragraph of its brief to the substance of Ashton's day-long testimony. Even then, all it says is that Ashton "did testify as to information provided to the

board of directors regarding political contributions" and "testified when asked about agreements identified in Topic 1 or the payment in Topic 2." (Opp'n 11.) FirstEnergy does not—and cannot—explain how Ashton's testimony on these issues was somehow adequate. Having failed to do so, a second deposition on these and the other agreed-upon topics is warranted. *See Oro BRC4, LLC v. Silvertree Apartments*, 2021 WL 2373667, at *8 (ordering second deposition where witness "was not adequately prepared as a corporate representative to discuss *any* of the Noticed Topics beyond his personal knowledge"); *LabXpress, LLC v. Lab'y Corp. of Am.*, 2011 WL 1099283, at *3 (W.D. Okla. Mar. 22, 2011) (same where designee was "unable to answer questions regarding numerous topics and even admitted to his unpreparedness").

FirstEnergy also claims Ashton's constant refrain of "I don't know" and "I'm not prepared" is being taken out of "context" for several reasons, the first of which is that Jones and Dowling sought testimony that was too "specific[]." (Opp'n 12-13.) But FirstEnergy does not even identify the questions it is talking about. At any rate, Jones and Dowling made clear ahead of the deposition that they sought "specific [] testimony" on a wide range of issues—all of which FirstEnergy agreed to provide. (**Ex. 6**, Chart, at Rows 1, 9, 12, 13; **Ex. 7**, 5/9/22 Ltr. 1-2.)

According to FirstEnergy, Ashton's "I don't know's" were appropriate whenever questions "went beyond the noticed topics or [] called for legal analysis." (Opp'n 14.) The prime example it offers on this front is a question about the $4 million payment made to SFA in January 2019: "Why wasn't FirstEnergy under any legal obligation to make that payment at that time?" (*Id.*) Nothing about this question was out of bounds. Indeed, the $4 million payment was the *exclusive* subject of Topic 2, in response to which FirstEnergy *agreed* "to be prepared to testify to its understanding of the purpose of the payment." (**Ex. 6**, Chart, at Row 2; **Ex. 7**, 5/9/22 Ltr., 1.) Nor does the question call for legal analysis. It merely seeks to examine the basis of a key position FirstEnergy staked out in the DPA—namely, that it "was under no legal obligation to make the payment at that

3

time." (**Ex. 3**, Notice Ex. B (DPA), 35); *see also In re Vitamins Antitrust Litig.*, 216 F.R.D. 168, 169, 173-74 (D.D.C. 2003) (reopening deposition where designee was unable to testify to accuracy or factual basis of company statements produced in submissions to government in criminal matter).

FirstEnergy's final attempt to put its witness's ubiquitous "I don't know's" into "context" is to argue that Jones and Dowling sought testimony on "the thoughts, beliefs, motivations, and understandings of" current and former employees, none of which are "reasonably available" to the company. (Opp'n 14.) But the questions cited by FirstEnergy do not support this characterization. For example, it points to questions about whether Ashton was "prepared to answer questions with respect to t[he] statement in the DPA that corporate executives were pushing for Sam Randazzo to be the PUCO Chairman," and whether ████████████████████████████████████████ ████████████████████████████████████████████████████████████████ (**Ex. 1**, Dep. Tr. at 284:13-285:4, 360:18-361:20; Opp'n 14.) Neither question calls for testimony about the thoughts and beliefs of others—no matter how hard FirstEnergy tries to frame them that way. (*See id.*; **Ex. 2**, Script 31-32.)

Nor can FirstEnergy credibly claim that it lacks information on the purpose of the payments made under the 2015 contract given that the company was a party to that agreement and has already made statements under oath about the purpose of those payments. (**Ex. 3**, Notice Ex. B **(**DPA), 35 (stating that FirstEnergy paid $4.3 million to Randazzo "through his consulting company in return for" Randazzo "performing official action in his capacity as PUCO Chairman").

Finally, FirstEnergy asserts that Ashton stood ready to testify about other information in her script that Jones and Dowling "either chose to ignore or question in a limited capacity." (Opp'n 11-12.) Jones and Dowling were not obliged to ask the questions FirstEnergy wanted to answer,

4

let alone cover everything in its script.[1] Nor do the cases FirstEnergy cites—*Aaron MacGregor & Associates, LLC v. Zhejiang Jinfei Kaida Wheels Co., Ltd.*, 328 F. Supp. 3d 906, 920-21 (N.D. Ind. 2018), and *Friedman v. 24 Hour Fitness USA, Inc.*, 2008 WL 11338168, at *2 (C.D. Cal. Nov. 14, 2018)—say otherwise. These cases merely hold that parties who ignore their own topics, *Aaron MacGregor*, 328 F. Supp. 3d at 920, or ask off-topic questions, *Friedman*, 2008 WL 11338168, at *2, generally cannot reopen those topics or questions without good reason. Moreover, contrary to FirstEnergy's suggestion (Opp'n 12), these cases have no bearing on Topics 1 through 4 given that a substantial amount of Jones and Dowling's examination focused on those topics.

## II. FirstEnergy Ignores the "Context" that Made Its Preparation Improper: Limiting Its Designee to a Script that Parroted the DPA and Omitted Relevant Information.

The company spends a large part of its opposition defending its use of an "84-page single spaced testifying aid prepared by counsel." As FirstEnergy sees it, Ashton's use of the "aid" was "appropriate, if not necessary" given the breadth and complexity of the noticed topics. (Opp'n 16.)

For starters, the materials Ashton relied on were not an "aid" that served to "refresh" her recollection from time to time, as the court described the materials in *Zeng v. Electronic Data Sys. Corp.*, 2007 WL 2713905, at *4 (E.D. Va. Sept. 13, 2017). Rather, they were a script that contained the totality of what Ashton was prepared to say. Indeed, as Jones and Dowling have shown (Br. 6-15), Ashton could not testify on any topic beyond the information she was provided by counsel.

Furthermore, Ashton's script largely rehashed passages from the DPA and left out critical

---

[1] FirstEnergy complains that the questioning for Topic 10 was off-base because it focused on the company's recoupment policy rather than its incentive plans. (Opp'n 11-12.) Yet, it agreed to prepare a witness on "executive compensation policies as they pertain to Jones and Dowling[.]" (**Ex 6**, Chart, at Row 10; **Ex. 7**, 5/9/22 Ltr., 2.) Any claim that Topic 10 does not encompass FirstEnergy's purported right to recoup Jones and Dowling's compensation—an issue that is also relevant to their termination (Topic 9)—only highlights the gamesmanship with which FirstEnergy has approached its Rule 30(b)(6) deposition.

context and information, including non-privileged factual information FirstEnergy learned from its internal investigation.[2] (*Id.* at 15-19.) Adding the fact that Ashton—the sole witness designated by FirstEnergy—had no personal knowledge of any topic, the company's preparation strategy ensured it would testify to little more than what it had already stated in the DPA.

None of FirstEnergy's cases condone this type of gamesmanship. *Zeng*, 2007 WL 2713905, at *4, and *Wausau Underwriters Insurance Co. v. Danfoss, LLC*, 310 F.R.D. 683, 688 (S.D. Fla. 2015), held that reference materials are appropriate when used to help the representative provide fulsome, complete, and non-evasive responses—not as a means to effectively limit the company's binding testimony, as was the case here. The witnesses in both cases also relied on their materials in a limited fashion, and the witness in *Zeng* was able to draw on her personal knowledge to testify on noticed topics. *Zeng*, 2007 WL 2713905, at *5; *Wausau*, 310 F.R.D. at 688.

*Zeitlin v. Bank of America, N.A.*, 2021 WL 5236939, at *5 (D. Nev. 2021), and *Pogue v. NorthWestern Mutual Life Insurance Co.*, 2017 WL 3044763, at *9 (W.D. Ky. July 18, 2017), do not even involve the use of a script or aid, let alone in the context here. Rather, *Pogue* dealt with an attorney's refusal to allow the witness to reference a source document in a claim file. 2017 WL 3044763, at *3. And *Zeitlin* simply reinforced the notion that company counsel may help prepare a Rule 30(b)(6) witness up until the point where the witness's testimony becomes "no more than a conduit for counsel's contentions." 2021 WL 5236939, at *5.

FirstEnergy's effort to distinguish *Neurontin*, 2011 WL 253434, and *Newmark Group, Inc.*

---

[2] FirstEnergy argues that any discussion of privilege "is beyond the scope of the motion" and "is more appropriately addressed at a later time[.]" (Opp'n 5, n.2.) It is wrong on both fronts. The company's decision to withhold relevant information from Ashton under an improper privilege claim reinforces that her preparation was inadequate. (Br. 18-19.) And absent an order affirming that FirstEnergy is required to prepare its witnesses on all facts known to the company—whether learned during its internal investigation or otherwise—the parties are likely to run into similar issues at a second Rule 30(b)(6) deposition of FirstEnergy.

6

*v. Avison Young (Canada) Inc.*, 2022 WL 1157476 (D. Nev. Apr. 19, 2022), falls flat. The company argues that the witnesses in both cases were prepared much less extensively than Ashton, who spent "dozens of hours" meeting with counsel and reviewing her materials. (Opp'n 4, 16-17.) But despite all those professed hours of preparation, Ashton remained tethered to a script that offered only superficial answers to the questions posed during her deposition.

FirstEnergy argues further that an "aid" was necessary because Ashton could not possibly "commit to memory all information potentially responsive to the dozens of topics and subtopics" that it agreed to prepare her on. (Opp'n 16.) Yet FirstEnergy was the one that chose to designate a single employee who lacked any knowledge on any topic to cover every topic when it could have easily identified any number of employees who do have knowledge. FirstEnergy emphasizes that "[a] corporation may designate anyone it chooses to testify on its behalf." (Opp'n 9.) That may be so, but having elected to educate Ashton from the ground up rather than rely on knowledgeable employees, FirstEnergy cannot use the sheer volume of relevant information that is available to the company as an excuse to limit its corporate testimony.

FirstEnergy also contends that Ashton was not required to conduct her own investigation, and that Jones and Dowling do not explain how an investigation by her would have helped. (*Id.* at 7-8.) This argument lacks merit and ignores the readily available steps that could have been taken to prepare Ashton on the topics and issues that FirstEnergy left out of its script.

For example, Ashton, as a trained accountant and assistant controller, could have reviewed accounting records that would have enabled her to explain ███████████████████████ ███████████████████████████, identify ████████████████████████████ █████████, and confirm whether ██████████████████████████████████ ████████████████████████████████████████████ (*See* Br. 9-10, 17.)

7

Ashton also could have reviewed the records ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, so that she could provide "specific [] testimony" about the meeting. (**Ex. 2**, Script, 83; **Ex. 6**, Chart, at Row 12). *See Champion Foodservice, LLC v. Vista Food Exchange, Inc.*, 2016 WL 4468000, at *13 (N.D. Ohio Aug. 23, 2016) ("Preparation of a Rule 30(b)(6) witness is an active process [requiring] designees to review all matters known or reasonably available to the corporation[.]"); *Oro*, 2021 WL 2373667, at *3 ("[T]he company is required 'to make a good faith effort to find out the relevant facts possessed by the corporation – to collect information, review documents and interview employees with personal knowledge . . . .'") (citation omitted). Indeed, it appears FirstEnergy did more to investigate the meeting in response to a recent press inquiry than it did to prepare for its May 20 deposition.[4]

Finally, Ashton could have interviewed former employees who were familiar ▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ so that she could have provided the agreed-upon "background and details" for those agreements. (*See* Br. 8-9, 17-18; **Ex. 6**, Chart, at Row 1.) To be sure, FirstEnergy argues that it could not have interviewed "former employees who are defendants in this action and/or represented by their own counsel." (Opp'n 8.) Yet, as the company tacitly admits, not ***every*** former employee who has knowledge of the SFA and IEU-Ohio contract falls into these categories. (*See* Opp'n 8 ("***Many*** of those now-former employees are defendants in the case and/or are represented by counsel separate from the company.") (emphasis added). Having failed to make any effort to gather their corporate knowledge, FirstEnergy cannot claim to have met its obligations under Rule

---

[4] In response to a recent press inquiry about the meeting, FirstEnergy's spokesperson was quoted as stating: "[T]o the extent you were asking if [Steven] Strah or [Samuel] Belcher were, in 2018, aware of or approved the payment to Mr. Randazzo referenced in your original email, the answer is no, and we are aware of no evidence to suggest otherwise." Dave Anderson, *FirstEnergy's Executive Council Knew of Randazzo Payout Long Before FBI Closed In*, Energy & Pol'y Institute (updated Jul. 27, 2022), https://www.energyandpolicy.org/firstenergy-executive-council/.

30(b)(6) and should not be allowed to shirk its testimony onto individual witnesses.

**III. An Additional, Seven-Hour Deposition on All Agreed-Upon Topics Is Necessary in Light of FirstEnergy's Lack of Meaningful Preparation the First Time.**

As a last resort, FirstEnergy argues that this motion "serves no useful purpose" because Jones recently served interrogatories on FirstEnergy and because Jones and Dowling can pose their unanswered questions to "percipient witnesses." (Opp'n 18.) But the cases FirstEnergy cites here actually undermine its contention. In *In re Ohio Execution Protocol Litigation*, the court ordered a deposition to go forward and reminded the parties that "[i]t is axiomatic that depositions and interrogatories serve different functions in the discovery process[.]" 2019 WL 11851135, at *4 (S.D. Ohio Aug. 23, 2019); *see also United States v. Taylor*, 166 F.R.D. 356, 362 n.7, 365-66 (M.D.N.C. 1996) (holding Rule 30(b)(6) witness was not properly prepared and warning that "case by case determination" governs whether interrogatory may be more appropriate than deposition). Moreover, FirstEnergy's effort to shirk questions designed to elicit the company's knowledge and understanding onto individual employees is precisely the type of evasiveness—the "temptation by the corporation to shunt a discovering party from 'pillar to post'"—Rule 30(b)(6) was designed to curb. *Janko Enters. v. Long John Silver's, Inc.*, 2014 U.S. Dist. LEXIS 185334, at *15 (W.D. Ky. Apr. 3, 2014) (citation omitted); *accord Oro*, 2021 WL 2373667, at *3.

The Court also should decline FirstEnergy's plea to "strictly limit" the time and scope of a second deposition. (Opp. 19.) To begin with, each of the cases it cites are distinguishable. *See Sprint Commn'cs Co., L.P. v. Comcast Cable Commn'cs, LLC*, 2015 WL 3742929, at *3-10 (court engaged in type of topic-by-topic analysis FirstEnergy avoids here); *Suri v. Equifax Info. Servs., LLC*, 2022 WL 2610430, at *2 (E.D. Mich. July 8, 2022) (movant sought relief on three topics only); *Pogue*, 2017 WL 3044763, at *10 (counsel asked questions clearly outside scope of notice). FirstEnergy also ignores that Jones and Dowling were often required to wait for Ashton to find the

9

applicable reference in her script and examine exhibits that should have been reviewed prior to the deposition (*see, e.g.*, **Ex. 1**, Dep. Tr. 232:2-233:8, 330:22-331:3, 336:4-14, 484:1-20), and that questioning was slowed by numerous privilege objections asserted by FirstEnergy's counsel (*see, e.g.*, *id.* at 292:25-295:8, 297:4-299:13, 390:7-391:17).

At bottom, Jones and Dowling were presented with a witness who was tied to a superficial script and were not given any real opportunity to obtain answers to questions that went beyond the face of the DPA. To order less than a full deposition on this record would reward the company for its failure to comply with Rule 30(b)(6) and prejudice Jones and Dowling's defenses.

## CONCLUSION

For the foregoing reasons, Jones and Dowling's motion to compel should be granted and the Court should order FirstEnergy to prepare for a second seven-hour deposition.

Dated: August 3, 2022                                                      Respectfully submitted,

/s/ John F. McCaffrey                                                      /s/ Carole S. Rendon
John F. McCaffrey (0039486)                                          Carole S. Rendon (0070345), *Trial Attorney*
John A. Favret (0080427)                                                Daniel R. Warren (0054595)
Hannah M. Smith (0090870)                                          Douglas L. Shively (0094065)
TUCKER ELLIS LLP                                                         Jeremy S. Dunnaback (0098129)
950 Main Avenue - Suite 1100                                       BAKER & HOSTETLER LLP
Cleveland, OH 44113                                                     127 Public Square, Suite 2000
Telephone: (216) 592-5000                                           Cleveland, OH 44114-1214
Facsimile: (216) 592-5009                                              Telephone: (216) 621-0200
Email: john.mccaffrey@tuckerellis.com                         Facsimile: (216) 696-0740
Email: john.favret@tuckerellis.com                                Email: dwarren@bakerlaw.com
Email: hannah.smith@tuckerellis.com                          Email: crendon@bakerlaw.com
                                                                                          Email: dshively@bakerlaw.com
Steve Grimes (*admitted pro hac vice*)                         Email: jdunnaback@bakerlaw.com
Dan K. Webb (*attended pro hac vice*)
WINSTON & STRAWN, LLP                                           George A. Stamboulidis (*admitted pro hac vice*)
35 W. Wacker Drive                                                        BAKER & HOSTETLER LLP
Chicago, IL 60601                                                          45 Rockefeller Plaza
Telephone: (312) 558-5600                                           New York, NY 10111
Facsimile: (312) 558-5700
Email: SGrimes@winston.com

Email:  DWebb@winston.com

*Attorneys for Michael J. Dowling*

Telephone:  (212) 589-4200
Facsimile:  (212) 589-4201
Email: gstamboulidis@bakerlaw.com

Albert G. Lin (0076888)
BAKER & HOSTETLER LLP
200 Civic Center Drive, Suite 1200
Columbus, OH 43215
Telephone:  (614) 462-4732
Facsimile:  (614) 462-2616
Email:  alin@bakerlaw.com

William S. Scherman (*admitted pro hac vice*)
Robert K. Hur (*admitted pro hac vice*)
Jason J. Mendro (*admitted pro hac vice*)
Jason R. Meltzer (*admitted pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306
Telephone:  (202) 955-8500
Facsimile:  (202) 467-0539
E-mail: wscherman@gibsondunn.com
E-mail: rhur@gibsondunn.com
E-mail: jmendro@gibsondunn.com
E-mail: jmeltzer@gibsondunn.com

*Attorneys for Defendant Charles E. Jones*

## **CERTIFICATE OF SERVICE**

The undesigned hereby certifies that on August 3, 2022, a copy of the foregoing document was served on all parties of record via the Court's electronic filing system.

*/s/ Carole S. Rendon*
*Attorney for Defendant Charles E. Jones*
