UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | | |
|---|---|---|
| In re FIRSTENERGY CORP. SECURITIES LITIGATION | ) ) ) | No. 2:20-cv-03785-ALM-KAJ |
| | ) | CLASS ACTION |
| This Document Relates To: | ) ) | Judge Algenon L. Marbley |
| ALL ACTIONS. | ) ) ) | Magistrate Judge Kimberly A. Jolson |

PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO FIRSTENERGY'S MOTION FOR CERTIFICATION OF AN ORDER FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. §1292(b) AND FOR STAY PENDING APPELLATE REVIEW

MURRAY MURPHY MOUL
  + BASIL LLP
JOSEPH F. MURRAY (0063373)
1114 Dublin Road
Columbus, OH  43215
Telephone:  614/488-0400
614/488-0401 (fax)
murray@mmmb.com


Liaison Counsel

ROBBINS GELLER RUDMAN
  & DOWD LLP
DARREN J. ROBBINS (*pro hac vice*)
MARK SOLOMON (*pro hac vice*)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
darrenr@rgrdlaw.com
marks@rgrdlaw.com


Class Counsel

**TABLE OF CONTENTS**

Page

I.     INTRODUCTION ....................................................................................................1

II.    BACKGROUND .....................................................................................................2

       A.     FirstEnergy Has No Defense on the Merits ................................................2

       B.     FirstEnergy's Most Urgent Needs Were Business Purposes ...................4

       C.     FirstEnergy's Disclosures of Attorney Mental Impressions, Opinions, and
              Conclusions from the Internal Investigation ..............................................4

       D.     Special Master's Order and Court's Ruling on Objections ......................5

III.   LEGAL STANDARDS ..........................................................................................8

       A.     Review Under §1292(b) Is Granted Sparingly and Only in Exceptional
              Cases ...........................................................................................................8

       B.     Unsworn Declarations Must Be Subscribed as True .............................10

       C.     Proponents Must Assert the Privilege or Protection with Particularity and
              Bear the Burden of Proving It with Valid Evidence ...............................10

IV.    ARGUMENT .......................................................................................................11

       A.     This Litigation Will Proceed in the Same Manner Regardless of the
              Court's Compulsion Order ......................................................................12

       B.     The Court's Compulsion Order Presents No Grounds for a Difference of
              Opinion .....................................................................................................15

              1.     FirstEnergy Fails to Cite a Single Case Supporting Its Demand to
                     Revise 28 U.S.C. §1746 ................................................................15

              2.     FirstEnergy Mischaracterizes the Underlying Orders and the
                     Applicable Standards ....................................................................16

       C.     No Justification for a Third Stay ..............................................................18

V.     CONCLUSION ....................................................................................................19

4893-5098-2083.v1

# TABLE OF AUTHORITIES

**Page**

## CASES

*Alomari v. Ohio Dep't of Pub. Safety*,
626 F. App'x 558 (6th Cir. 2015) ........................................................17

*Appalachian Reg'l Healthcare, Inc. v. U.S. Nursing Corp.*,
68 F.4th 324 (6th Cir. 2023) ........................................................14

*Biegas v. Quickway Carriers, Inc.*,
573 F.3d 365 (6th Cir. 2009) ........................................................10, 11

*Binger v. Alpont Transp. LLC*,
2019 WL 8331431 (S.D. Ohio Nov. 18, 2019)........................................13

*Carr v. C.R. Bard, Inc.*,
297 F.R.D. 328 (N.D. Ohio 2014) ........................................................11

*Carter v. Bradshaw*,
2008 WL 788561 (N.D. Ohio Mar. 20, 2008) ........................................12

*Cheryl & Co. v. Krueger*,
2019 WL 6521956 (S.D. Ohio Dec. 4, 2019) ........................................11

*Coleman v. Sterling*,
No. 09-CV-1594 W (BGS)
(S.D. Cal. July 18, 2011) ........................................................15

*Coleman v. Sterling*,
2012 WL 12952831 (S.D. Cal. Feb. 21, 2012)........................................15

*Decker v. Chubb Nat'l Ins. Co.*,
2015 WL 5954584 (S.D. Ohio Oct. 14, 2015),
*report and recommendation adopted*,
2015 WL 6872937 (S.D. Ohio Nov. 9, 2015 ........................................18

*Electrolux Home Prods., Inc. v. Whitesell Corp.*,
2006 WL 355453 (S.D. Ohio Feb. 15, 2006),
*report and recommendation adopted*,
2006 WL 625293 (S.D. Ohio Mar. 8, 2006)........................................12

*Erickson v. Hocking Tech. Coll.*,
2018 WL 9414018 (S.D. Ohio Mar. 27, 2018)........................................11

*Geary v. Green Tree Servicing LLC*,
2018 WL 7360570 (S.D. Ohio Oct. 11, 2018)........................................13

- ii -

**Page**

*Henriquez-Disla v. Allstate Prop. & Cas. Ins. Co.*,
2014 WL 3887750 (E.D. Pa. Aug. 7, 2014) ...........................................................14

*Henriquez-Disla v. Allstate Prop. & Cas. Ins. Co.*,
No. 2:13-cv-00284-ETH (E.D. Pa. Oct. 8, 2014) ...................................................14

*In re AEP ERISA Litig.*,
2005 WL 6342716 (S.D. Ohio Mar. 31, 2005)........................................................13

*In re City of Memphis*,
293 F.3d 345 (6th Cir. 2002) ..............................................................................8, 12

*In re Cnty. of Erie*,
473 F.3d 413 (2d Cir. 2007)....................................................................................17

*In re Haynes*,
577 B.R. 711 (E.D. Tenn. 2017) .............................................................................11

*In re King's Daughters Health Sys., Inc.*,
31 F.4th 520 (6th Cir. 2022) .....................................................................................1

*In re VisionAmerica, Inc. Sec. Litig.*,
2002 WL 31870559 (W.D. Tenn. Dec. 18, 2002) ...................................................10

*Kitchen v. Croll*,
2020 WL 1465978 (W.D. Mich. Mar. 26, 2020),
*aff'd sub nom. Kitchen v. Snyder*, 2021 WL 4470032
(6th Cir. June 23, 2021) ...........................................................................................12

*Marinkovic v. Hazelwood*,
2023 WL 3276248 (N.D. Ohio May 5, 2023),
*appeal dismissed*, 2023 WL 5207954
(6th Cir. June 6, 2023) .............................................................................................19

*Marques v. Gabriel, Inc.*,
136 F.R.D. 137 (S.D. Ohio 1991) ...........................................................................12

*Martin v. JBS Techs., LLC*,
2007 WL 9733710 (S.D. Ohio Mar. 6, 2007)....................................................13, 15

*Mia. Valley Fair Hous. Ctr. Inc. v. Metro Dev. LLC*,
2017 WL 10980458 (S.D. Ohio May 16, 2017) ......................................................18

*Milczak v. Gen. Motors, LLC*,
_ F.4th _, 2024 WL 2287687 (6th Cir. May 21, 2024).......................................15, 16

**Page**

*Mohawk Indus., Inc. v. Carpenter*,
558 U.S. 100 (2009)............................................................................1, 8, 11

*Morgan v. St. Francis Hosp.*,
2021 WL 9528124 (6th Cir. Nov. 9, 2021),
*cert. denied*, _ U.S. _, 143 S. Ct. 158 (2022)...........................................8, 12

*Morgantown Mach. & Hydraulics of Ohio, Inc. v. Am. Piping Prods., Inc.*,
2016 WL 3555431 (N.D. Ohio June 30, 2016).........................................19

*Prater v. Consol. Rail Corp.*,
272 F. Supp. 2d 706 (N.D. Ohio 2003)....................................................12

*Sols., LLC v. Windstream Commc'ns, LLC*,
2018 WL 1870140 (S.D. Ohio Apr. 19, 2018) .........................................14

*U.S. ex rel. Elliott v. Brickman Grp. Ltd., LLC*,
845 F. Supp. 2d 858 (S.D. Ohio 2012) .....................................................9

*United States ex rel. Scott v. Humana, Inc.*,
2023 WL 1420426 (W.D. Ky. Jan. 31, 2023)...........................................11

*United States v. Dakota*,
197 F.3d 821 (6th Cir. 1999) ..................................................................10

*William Powell Co. v. Nat'l Indem. Co.*,
2017 WL 3422070 (S.D. Ohio Aug. 9, 2017)...........................................12

*Wilson v. Russo*,
2022 WL 911271 (N.D. Ohio Mar. 29, 2022)
(No. 3:20-CV-2498 (N.D. Ohio Dec. 3, 2021))........................................18

## STATUTES, RULES, AND REGULATIONS

18 U.S.C.
§1001.......................................................................................................16

28 U.S.C.
§1292(b) ......................................................................................... *passim*
§1746.............................................................................................6, 10, 15

Federal Rules of Civil Procedure
Rule 26(b)(5)............................................................................................11

**Page**

## SECONDARY AUTHORITIES

H.R. Rep. No. 94-1616 (1976),
*as reprinted in* 1976 U.S.C.C.A.N. 5644, 5645 ......................................................................10

4893-5098-2083.v1

## I.    INTRODUCTION

FirstEnergy's motion asks the Court to defy precedent from the Supreme Court and the Sixth Circuit, holding that "postjudgment appeals generally suffice to protect the rights of litigants and ensure the vitality of the attorney-client privilege." *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 109 (2009); *In re King's Daughters Health Sys., Inc.*, 31 F.4th 520, 526 (6th Cir. 2022) (same; denying mandamus).

Far from an exception to this well-reasoned rule, the Court's decision epitomizes one that does ***not*** involve a controlling question of law, presents ***no conflict***, and ***could not*** have any impact whatsoever on the viability of any claim presented, let alone such a significant impact as to "materially advance the ultimate termination of [this] litigation." 28 U.S.C. §1292(b). These are the requirements for an interlocutory appeal and FirstEnergy cannot satisfy one, let alone all three. This is a strong case supported by overwhelming evidence regardless of the Court's decision, as FirstEnergy has conceded in a detailed confession (based on facts attributed to its investigations). It has also disclosed critical aspects of its internal investigations (including its attorneys' opinions and impressions) to deceive its outside auditor, make human resources decisions, bargain with the government, preserve access to capital, and defend this case. Throughout months of voluminous briefing, FirstEnergy failed to present any documents for *in camera* review or any other evidence to answer the most basic question of all: What, if anything, is there to protect? There never was anything to protect because FirstEnergy's investigation was primarily for business purposes, not legal advice. It was FirstEnergy's burden to prove otherwise, and the only evidence it submitted was an insufficient conclusory statement that contained no attestation of ***truth***.

This is not the stuff of interlocutory appeals and Plaintiffs respectfully request that the Court follow clear Supreme Court and Sixth Circuit precedent by denying FirstEnergy's motion.

- 1 -

## II. BACKGROUND

### A. FirstEnergy Has No Defense on the Merits

FirstEnergy's motion is doomed from the start because two of the three prerequisites to an interlocutory appeal require proof that the outcome of the appeal would have a nearly dispositive impact on the litigation. That is not a remote possibility here. Although Plaintiffs need to conduct additional discovery to make their case ironclad, they have already assembled sufficient evidence to prove their claims – aided in no small part by FirstEnergy's detailed confession and other disclosures related to its internal investigations.[1]

FirstEnergy's sworn confession and indisputable evidence prove the following:

- FirstEnergy conspired with its then-CEO defendant Charles Jones and then-Vice President Michael Dowling to bribe elected official Larry Householder. Status Report, Ex. 5 (DPA), ECF 259-5 at PageID 6016; ECF 438-1 at PageID 10007.

- FirstEnergy bribed Larry Householder to accomplish what Jones had told investors was the Company's top priority: bailing out its struggling nuclear plants. Status Report, Ex. 5 (DPA), ECF 259-5 at PageID 6016-29.

- FirstEnergy put millions of dollars at Householder's disposal to elect him Speaker of the House, to pass legislation that would uniquely benefit FirstEnergy, and to prevent Ohioans from voting on the legislation. Status Report, Ex. 5 (DPA), ECF 259-5 at PageID 6016-32.

- FirstEnergy conspired with Jones and Dowling to bribe incoming PUCO Chairman Samuel Randazzo. Status Report, Ex. 5 (DPA), ECF 259-5 at PageID 6016; ECF 438-1 at PageID 10007.

- FirstEnergy bribed Randazzo to help with the nuclear bailout legislation and to eliminate an upcoming rate case, internally deemed the "Ohio Hole" and

---

[1] All terms not otherwise defined herein have the same meaning as set forth in the Memorandum of Law in Support of the Moving Parties' Motion to Compel Discovery Regarding FirstEnergy's Internal Investigation (ECF 489-1). Unless otherwise noted, all "Ex. _" references are to exhibits attached to the Declaration of Jason A. Forge, filed concurrently herewith. Additionally, unless otherwise noted, citations are omitted and emphasis is added throughout. Plaintiffs in *MFS Series Trust I, et al. v. FirstEnergy Corp., et al.*, No. 2:21-cv-05839-ALM-KAJ, and *Brighthouse Funds Trust II – MFS Value Portfolio, et al. v. FirstEnergy Corp., et al.*, No. 2:22-cv-00865-ALM-KAJ, join the arguments in this Opposition.

lamented by Jones for holding down FirstEnergy's stock price.  Status Report, Ex. 5 (DPA), ECF 259-5 at PageID 6034-40.

- As PUCO Chairman, Randazzo was lending so much assistance to FirstEnergy that others within PUCO openly questioned whether he worked for PUCO or for FirstEnergy.  Status Report, Ex. 5 (DPA), ECF 259-5 at PageID 6042.

- Jones wanted FirstEnergy's stock price to reach $50 per share so he could sell millions of dollars of shares for an estate in Florida to retire.  Ex. 1 (P. Ex. 484) at FE_CIV_SEC_0251262; Ex. 2 (P. Ex. 485) at FE_CIV_SEC_0669854); Ex. 3 (P. Ex. 486) at Jones_Securities Litigation 003472.

- After Householder succeeded in passing HB6,

  - Jones and Dowling sent celebratory text messages, proclaiming "[w]e made a bbiiiiiiig bet and it paid off" (Status Report, Ex. 5 (DPA), ECF 259-5 at PageID 6029; ECF 515-2 at PageID 11100;

  - another included a meme of Mount Rushmore featuring the faces of Randazzo, Dowling, Matt Evans, and Ty Pine, along with the caption "HB6" across the top and "FUCK ANYBODY WHO AINT US" across the bottom (Status Report, Ex. 5 (DPA), ECF 259-5 at PageID 6040; Ex. 4 (P. Ex. 99) at FE_CIV_SEC_0136124); and

  - Jones boasted to investors that HB6 made one-third of FirstEnergy recession-proof and thanked Householder and Randazzo for their help – while concealing how FirstEnergy had secured their help. (Movants' Compel Reply, Ex. 14 (P. Ex. 281), ECF 529-2 at PageID 11566).

- After Randazzo closed the Ohio Hole by eliminating FirstEnergy's rate case, Jones sent Randazzo a screenshot showing a bump up in FirstEnergy's stock price and a two-word message:  "Thank you!!"  Status Report, Ex. 5 (DPA), ECF 259-5 at PageID 6041; Status Report, Ex. 14 (P. Ex. 104 ), ECF 240-2 at PageID 5788.

- The day the Department of Justice announced its arrests of Householder and others, as well as FirstEnergy's central role in a massive public corruption conspiracy, FirstEnergy's stock price plummeted – despite FirstEnergy's best efforts to deny the very criminal activity it would later confess.  Class Cert Mot., Ex. E (Dalrymple Rpt.), ECF 293-7 at PageID 6283; Movants' Compel Reply, Ex. 12 (P. Ex. 284), ECF 529-2 at PageID at 11464.

- FirstEnergy fired (or "separated") its top executive, top lawyers, and many senior officers for participating in its corruption scheme, facilitating the corruption, and/or concealing evidence of the corruption from investigators.

Movants' Response to FirstEnergy's Objections to the Special Master's Orders Dated November 29, 2023 and November 30, 2023 (ECF 615) ("Response") at PageID 13531-34.

## B. FirstEnergy's Most Urgent Needs Were Business Purposes

As detailed in Movants' Response (ECF 615), FirstEnergy's most urgent needs for the internal investigations were business purposes. First, its mandatory SEC Form 10-Q had to be filed within weeks, for which FirstEnergy needed the approval of its independent auditor, PwC, and meant that FirstEnergy had to gather facts to share with PwC, or at least create the appearance of doing so. Response, ECF 615 at PageID 13531. Second, FirstEnergy needed the internal investigation to compile facts for the business purpose of determining which officers to fire or "separate" – the Board of Directors used lawyers to gather facts for its employment decisions. *Id.* at 13531-34. Third, FirstEnergy needed to compile facts for the business purpose of preserving its access to capital by striking a bargain with the government. *Id.* at 13534-35.

FirstEnergy failed to present any evidence disputing or rebutting these business purposes.

## C. FirstEnergy's Disclosures of Attorney Mental Impressions, Opinions, and Conclusions from the Internal Investigation

To deceive PwC into providing its approval for its mandatory SEC filing, FirstEnergy shared with PwC nearly every aspect of its internal investigation. This spanned the most critical elements, from "detailed interview debriefs," to regular "[u]pdates on findings and conclusions," to a nearly complete provision of relevant documents (withholding only eight), to the ultimate (albeit later diametrically contradicted) conclusion, "to hear and document the results of the Investigation," to declaring "that there has been no evidence of violations of laws by [Jones and others] as it relates to this investigation," to assuring PwC that "[no] incremental work was necessary to support the conclusions [the Investigation Team and Investigation Counsel] were reaching." Response, ECF 615 at PageID 13535-36.

FirstEnergy has repeatedly conceded that it has disclosed to its adversaries here (as well as to the government) every fact that its internal investigations uncovered, including all the many facts and admissions that FirstEnergy disclosed in its Deferred Prosecution Agreement. Likewise, FirstEnergy deployed during depositions attorney-drafted scripts that disclosed and affirmatively used all manner of FirstEnergy's investigating attorneys' opinions and impressions, including: whether laws were violated; whether someone conspired with someone else and if so, with whom; whether interviewees were candid; whether certain interviewees had reasonably ensured information was produced in connection with the internal investigation; whether employees had failed to act when confronting misconduct; whether employees had participated in the use of company devices and systems for inappropriate messaging; what certain FirstEnergy employees and directors knew or did not know; what the internal investigation uncovered and the FirstEnergy Board of Directors' response; and, whether there is evidence of someone's knowledge. Response, ECF 615 at PageID 13537-39, 13564-66.

FirstEnergy failed to present any evidence disputing these disclosures. Yet, FirstEnergy openly acknowledges that it has been and intends to continue instructing witnesses not to answer any questions about the factual bases for their own actions, decisions, or opinions if the witness happened to have learned those facts from a lawyer – the same facts FirstEnergy has repeatedly disclosed – culminating in FirstEnergy's counsel declaring that facts become privileged if conveyed by counsel. Compel Mot., ECF 489-1 at PageID 10485-86.

### D. Special Master's Order and Court's Ruling on Objections

Movants filed their Motion to Compel Discovery Regarding FirstEnergy's Internal Investigation on June 30, 2023 (ECF 489). Over the five months that followed, the parties filed hundreds of pages of briefs and exhibits and the Special Master entertained lengthy oral arguments concerning the motion. *See, e.g.*, Compel Opp., ECF 510; Movants' Compel Reply, ECF 529;

- 5 -

Jones' Supp. Statement, ECF 548; Movants' Compel Supp. Mem., ECF 549.  None of those submissions included a motion to file an amended declaration.  The November 29, 2023 Order by Special Master on Motion to Compel (the "Special Master's Compulsion Order") (ECF 571) was entered on November 29, 2023.  That same day, FirstEnergy filed its objection to the Special Master's Compulsion Order, rather than a motion for leave to file a valid declaration.  Notice of Objections, ECF 572.  The next day, FirstEnergy filed a motion to stay the Special Master's Compulsion Order, but still did not file a motion for leave to file a valid declaration.  Stay Mot., ECF 573.

Just a few hours after FirstEnergy moved to stay the Special Master's Compulsion Order, the Special Master held a hearing on it.  11/30/23 Hr'g Tr., ECF 587.  The Special Master emphasized that FirstEnergy still had not moved for leave to file an amended declaration.  11/30/23 Hr'g Tr., ECF 587 at PageID 12909.  Ultimately, the Special Master found that: (1) FirstEnergy had filed a defective so-called declaration from defendant James O'Neil, which did not include a truth attestation (*i.e.*, that the information it contains is "true and correct"), as 28 U.S.C. §1746 requires, and would therefore be excluded from consideration (Special Master's Compulsion Order, ECF 571 at PageID 12377-84); (2) FirstEnergy had failed to carry its burden to establish that the attorney-client privilege or work product protection applied to any specific information or documents related to its internal investigation, in that its business/human resources purpose was at least as significant as any legal purpose and the investigation would have been prepared in substantially the same manner regardless of the anticipated litigation; and (3) facts are not privileged, irrespective of how a witness learns about them.  *Id.* at 12385-87.

In the weeks that followed, FirstEnergy filed a string of similar but separate objections and motions, including a 49-page memorandum, which cited a total of 64 cases and "other" authorities (out of only 76) that it had not cited prior to the Special Master's Compulsion Order.  *Compare*

- 6 -

Compel Opp., ECF 510 at PageID 10894-97, and FirstEnergy's Supp. Submission, ECF 550 at PageID 11890-91, *with* FirstEnergy's Objections, ECF 607-1 at PageID 13164-69.

On May 6, 2024, the Court issued its Order & Opinion overruling and denying FirstEnergy's myriad objections and motions (the "Court's Compulsion Order") (ECF 653). The Court's Compulsion Order found that: (1) the Special Master did not abuse his discretion by rejecting the O'Neil statement for its failure to comply with §1746's explicit requirement that a declarant state that the information contained in the declaration is "true," as that attestation is what prevents someone from "declaring" falsehoods without triggering the penalty of perjury (*id.* at 14250-52); (2) the O'Neil statement did "not bear indicia of reliability" in that he is a defendant and his statement was uncorroborated (*id*. at 14252-53); (3) "FirstEnergy acknowledge[d] that they used the internal investigations for many purposes, including business and employment decisions (Doc. 510 at 20, 25-26)[,] [y]et [did] not clarify what materials, if any, contain only confidential communications for the predominant purpose of rendering legal advice, and which materials were primarily made for other reasons" (*id.* at 14263-64); (4) "FirstEnergy did not provide specifics on 'when, where, how, to whom, and in what manner' legal advice was communicated during the internal investigations and therefore failed to meet its burden" (*id*. at 14264); (5) FirstEnergy did not provide the Special Master with a privilege log or with any documents to review *in camera* (*id*. at 14264-65); (6) "FirstEnergy failed to meet its burden of proving that the predominant purpose of the internal investigation was legal" (*id.* at 14265); and (7) even "putting aside the O'Neil Declaration's deficiency, [the statement on which FirstEnergy sought to rely] is a conclusory statement that does not help FirstEnergy meet its burden" (*id.* at 14267); *see also id.* at 14254, 14264).

## III.   LEGAL STANDARDS

### A.   Review Under §1292(b) Is Granted Sparingly and Only in Exceptional Cases

FirstEnergy's motion begins with the misleading proclamation that courts in this Circuit "routinely" certify appeals of privilege rulings.  FirstEnergy's Memorandum in Support of Its Motion for Certification of an Order for Interlocutory Appeal Under 28 U.S.C. §1292(b) and for Stay Pending Appellate Review ("FirstEnergy's Appeal & Stay Mot.") (ECF 661-1) at PageID 14369.  To support that assertion, FirstEnergy searched back over twenty years and found a grand total of two such cases throughout the entire Circuit.  *Id.* at 14369-70 n.1.  There is nothing "routine" about the extraordinary relief that FirstEnergy is requesting.  Privilege rulings are so infrequently certified for appeal because the Supreme Court and the Sixth Circuit have directed it to be that way.  As the Supreme Court has held, "[p]ermitting piecemeal, prejudgment appeals, we have recognized, undermines 'efficient judicial administration' and encroaches upon the prerogatives of district court judges, who play a 'special role' in managing ongoing litigation."  *Mohawk*, 558 U.S. at 106.

This is true under 28 U.S.C. §1292(b), as the Sixth Circuit has made clear for decades that "[r]eview under §1292(b) is granted sparingly and only in exceptional cases."  *In re City of Memphis*, 293 F.3d 345, 350 (6th Cir. 2002).  This standard provides essential context for application of the three requirements for interlocutory appeal: "(1) the order involves a controlling question of law, (2) a substantial ground for difference of opinion exists regarding the correctness of the decision, ***and*** (3) an immediate appeal may materially advance the ultimate termination of the litigation."  *Id.* (citing 28 U.S.C. §1292(b)); *see also Morgan v. St. Francis Hosp.*, 2021 WL 9528124, at *3 (6th Cir. Nov. 9, 2021), *cert. denied*, _ U.S. _, 143 S. Ct. 158 (2022) (same).

A legal issue is controlling if it could materially affect the outcome of the entire case.  *City of Memphis*, 293 F.3d at 351.  This high bar "generally does not include matters within the discretion of the trial court.  A ruling on the admissibility of evidence is reviewed for abuse of discretion.  An

allegation of abuse of discretion on an evidentiary ruling does not create a legal issue under §1292(b)." *Id.* Likewise, "'[w]hen litigation will be conducted in substantially the same manner regardless of [the court's] decision, the appeal cannot be said to materially advance the ultimate termination of the litigation.'" *Id.* (some alteration in original). Some courts within the Sixth Circuit have interpreted this to mean that "'[a] question of law is controlling if reversal of the district court's order would terminate the action.'" *U.S. ex rel. Elliott v. Brickman Grp. Ltd., LLC*, 845 F. Supp. 2d 858, 865 (S.D. Ohio 2012) (citing cases). "As many cases recognize, there are actually two requirements within what this Court (and most others) has labeled as §1292(b)'s first element: '(1) The question involved must be one of law; [and] (2) It must be controlling.'" *Id.* (alteration in original) (citing cases). The "controlling" requirement was met in *U.S. ex rel. Elliott* because, according to the defendants (with apparently no dispute from the plaintiffs), a ruling in the defendants' favor "'would be substantively dispositive of [Plaintiff's] theories of liability.'" *Id.* (alteration in original)

Turning to the second requirement, "'[a] "difference of opinion" is established "when (1) the case is difficult and of first impression; (2) a difference of opinion exists within the controlling circuit; or (3) the circuits are split on the issue."'" *U.S. ex rel. Elliott*, 845 F. Supp. 2d at 866. This requirement was not satisfied in *U.S. ex rel. Elliott*, as the defendants failed to show an actual difference of opinion with the Sixth Circuit (and did not attempt to establish the first or third bases).

The third requirement overlaps somewhat with the first: "'An interlocutory appeal will materially advance the litigation if it will "save substantial judicial resources and litigant expense."'" *U.S. ex rel. Elliott*, 845 F. Supp. 2d at 871 (citing cases). The defendants in *U.S. ex rel. Elliott* failed to satisfy the third requirement because "regardless of the result of an interlocutory appeal, Plaintiff's second count would remain to be litigated in this Court. As a result, an immediate appeal would not materially advance the ultimate ***termination*** of the litigation." *Id.* (emphasis in original).

- 9 -

**B.      Unsworn Declarations Must Be Subscribed as True**

A fundamental requirement of all declarations is that they must be subscribed "as true under penalty of perjury."  28 U.S.C. §1746.  The legislative history for 28 U.S.C. §1746 confirms that Congress intended the truth attestation to be mandatory:

> The requirement that the person who signs an affidavit must appear before a notary and be sworn can be inconvenient. . . .
>
> The legislation provides an alternative to affidavits and sworn documents *when it is necessary to require verification of the truthfulness of what the document contains*.
>
> *         *         *
>
> Section 1 of H.R. 15531 amends title 28 of the United States Code by adding a new section (1746) to authorize the use of unsworn statements described to under penalty of perjury. . . .
>
> Section 1746 also sets forth the *language that must appear* in the document in order for it to qualify as an unsworn declaration under penalty of perjury.  If the document is executed within the United States, it must be described to as follows:
>
> I declare (or certify, verify, or state) under penalty of perjury *that the foregoing is true and correct*.  Executed on (date).

H.R. Rep. No. 94-1616, at 1-2 (1976), *as reprinted in* 1976 U.S.C.C.A.N. 5644, 5645.

**C.      Proponents Must Assert the Privilege or Protection with Particularity and Bear the Burden of Proving It with Valid Evidence**

"The burden of establishing the existence of the privilege rests with the person asserting it." *United States v. Dakota*, 197 F.3d 821, 825 (6th Cir. 1999).  The same is true for parties who claim work product protection – they bear the burden.  *Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 381 (6th Cir. 2009).  Likewise, federal courts in this Circuit require "the proponent of the privilege" to carry the burden of showing nonwaiver as an element of attorney-client privilege.  *See In re VisionAmerica, Inc. Sec. Litig.*, 2002 WL 31870559, at *1-*2 (W.D. Tenn. Dec. 18, 2002) (collecting cases and noting that the Sixth Circuit has favorably cited cases holding that the party

- 10 -

claiming privilege must also show nonwaiver); *Cheryl & Co. v. Krueger*, 2019 WL 6521956, at *2 (S.D. Ohio Dec. 4, 2019) (same).

As the court observed, a proponent must assert the privilege or work product protection "with particularity for each document, or category of documents" it seeks to withhold. *In re Haynes*, 577 B.R. 711, 740 (E.D. Tenn. 2017); *see also* Fed. R. Civ. P. 26(b)(5) (stating that when a party withholds materials as privileged, they must describe the materials being withheld so "other parties [can] assess the claim"). After making these particularized assertions, the proponent must provide evidence by way of "affidavits, depositions, or equivalent proof" that the materials are privileged or protected. *Biegas*, 573 F.3d at 381-82; *see Erickson v. Hocking Tech. Coll.*, 2018 WL 9414018, at *3 (S.D. Ohio Mar. 27, 2018) ("Simply asserting that information is privileged 'is insufficient to meet the burden.'"). "Courts reject privilege assertions 'where the only basis for the claim is an affidavit containing conclusory statements' because such affidavits do not constitute the 'specific and detailed evidentiary material' necessary to justify protection." *United States ex rel. Scott v. Humana, Inc.*, 2023 WL 1420426, at *7 (W.D. Ky. Jan. 31, 2023) (quoting *Carr v. C.R. Bard, Inc.*, 297 F.R.D. 328, 332 (N.D. Ohio 2014)). Likewise, work product assertions "'will be rejected where the only basis for the claim is an affidavit containing conclusory statement[s].'" *Biegas*, 573 F.3d at 381 (alteration in original).

## IV.    ARGUMENT

FirstEnergy's motion does not come close to carrying its burden of satisfying all three requirements for interlocutory appeal. Tellingly, FirstEnergy's motion omits the Supreme Court's holding that "[a]ppellate courts can remedy the improper disclosure of privileged material in the same way they remedy a host of other erroneous evidentiary rulings: by vacating an adverse judgment and remanding for a new trial in which the protected material and its fruits are excluded from evidence." *Mohawk*, 558 U.S. at 109. FirstEnergy's motion likewise omits the Sixth Circuit's

standard that "[r]eview under §1292(b) is granted sparingly and only in exceptional cases." *City of Memphis*, 293 F.3d at 350; *Morgan*, 2021 WL 9528124, at *3.  These glaring omissions of the applicable standards effectively admit that FirstEnergy's motion fails under them.

These standards explain why courts in this Circuit ***deny*** requests to certify appeals of privilege rulings far more often than granting them.[2]  More importantly, no court in any circuit has ever certified an appeal of a privilege ruling under the circumstances here, where none of the claims or defenses are impacted by the privilege ruling at issue, the proponent of the privilege related to an internal investigation publicly confessed to its central role in the years-long criminal conspiracy that was the subject of the investigation, disclosed all the facts uncovered in the investigation, used the internal investigation to deceive its outside auditor, strategically disclosed to adversaries wide swaths of purportedly protected information (including its attorneys' opinions and impressions, which are typically shielded from disclosure), and, perhaps most fundamentally, failed to attempt to establish the existence of any undisclosed protectable information.

### A. This Litigation Will Proceed in the Same Manner Regardless of the Court's Compulsion Order

One of the main reasons interlocutory appeals are strongly disfavored is because they inherently and materially disrupt the progress of cases.  This is why two of the three prerequisites for interlocutory appeal require a significant offsetting upside, namely, that a different ruling on the issue could effectively end the litigation.  Having presided over this litigation for more than four years, the Court is familiar with the volume of evidence Plaintiffs have amassed without the benefit

---

[2]      *See, e.g.*, *Morgan*, 2021 WL 9528124, at *1, *3; *City of Memphis*, 293 F.3d at 351; *Kitchen v. Croll*, 2020 WL 1465978, at *2 (W.D. Mich. Mar. 26, 2020), *aff'd sub nom. Kitchen v. Snyder*, 2021 WL 4470032 (6th Cir. June 23, 2021); *William Powell Co. v. Nat'l Indem. Co.*, 2017 WL 3422070, at *1 (S.D. Ohio Aug. 9, 2017); *Electrolux Home Prods., Inc. v. Whitesell Corp.*, 2006 WL 355453, at *2 (S.D. Ohio Feb. 15, 2006), *report and recommendation adopted*, 2006 WL 625293 (S.D. Ohio Mar. 8, 2006); *Prater v. Consol. Rail Corp.*, 272 F. Supp. 2d 706, 710 (N.D. Ohio 2003); *Carter v. Bradshaw*, 2008 WL 788561, at *1 (N.D. Ohio Mar. 20, 2008); *Marques v. Gabriel, Inc.*, 136 F.R.D. 137, 140 (S.D. Ohio 1991).

of the additional discovery that is the subject of the Court's Compulsion Order. In *Binger v. Alpont Transp. LLC*, 2019 WL 8331431, at *1 (S.D. Ohio Nov. 18, 2019) (Marbley, Chief J.), the Court granted summary judgment dismissing third-party contribution claims against one of the defendants, and the two remaining defendants filed a §1292(b) motion. Although the Court's summary judgment decision changed the composition of the parties for trial, the Court held that "[e]ven if the issues Defendants wishes to appeal were resolved in their favor, trial on the issue of liability must still go on in the same manner, so these issues cannot be considered 'controlling.'" *Id.* at *2. Likewise, the Court noted:

> [T]he resolution of the two issues Defendants wish to appeal will not materially advance the litigation since the issue of liability must still be determined separately from the issue of contribution. Even a reversal of the district court's decision on summary judgment will not terminate the litigation or a substantial number of claims.

*Id.* at *4. Accordingly, the moving defendants in *Binger* could not satisfy §1292(b)'s first or third requirements.

FirstEnergy cannot match even the *Binger* defendants' inadequate showing, as the Court's Compulsion Order has **no** impact on the viability of **any** claims **or** the composition of the parties. This litigation will be conducted in virtually the same manner regardless of the Court's Compulsion Order. *See also Martin v. JBS Techs., LLC*, 2007 WL 9733710, at *2 (S.D. Ohio Mar. 6, 2007) (moving defendant "has admitted that even if it is successful in its appeal, this litigation would not be terminated," so "interlocutory appeal would not materially expedite its resolution [and] this Court need not consider the question of whether there are substantial grounds for a difference of opinion"); *In re AEP ERISA Litig.*, 2005 WL 6342716, at *4 (S.D. Ohio Mar. 31, 2005) (although certain claims could be significantly impacted, those were ancillary to the plaintiffs' core claims and thus an appeal would not "materially advance the ultimate termination of the litigation"); *Geary v. Green Tree Servicing LLC*, 2018 WL 7360570, at *1 (S.D. Ohio Oct. 11, 2018) (interlocutory appeal concerning a damages **cap** "would, at this juncture, result only in delay").

- 13 -

Given the volume of evidence Plaintiffs have already amassed, including FirstEnergy's own detailed confession, it is implausible that a reversal of the Court's Compulsion Order, which simply compels production of additional evidence, could materially affect the outcome of the case or materially advance its ultimate termination.[3]  Notwithstanding FirstEnergy's misleading citations and parsed quotes (for example, the Special Master never indicated that the Special Master's Compulsion Order may be case dispositive), no court has ever allowed an interlocutory appeal under circumstances resembling those presented here, where a movant has ***admitted wrongdoing*** and so plainly failed to satisfy §1292(b)'s first and third requirements.  For example, FirstEnergy repeatedly cites a decade-old case from the Eastern District of Pennsylvania, *Henriquez-Disla v. Allstate Prop. & Cas. Ins. Co.*, 2014 WL 3887750 (E.D. Pa. Aug. 7, 2014), as an example the Court should follow, while disregarding that the Third Circuit ultimately ***denied*** the §1292(b) petition in that case. *Henriquez-Disla v. Allstate Prop. & Cas. Ins. Co.*, No. 2:13-cv-00284-ETH, ECF 58 (E.D. Pa. Oct. 8, 2014).

Similarly, in the only case from this District that FirstEnergy cites, *irth Sols., LLC v. Windstream Commc'ns, LLC*, 2018 WL 1870140, at *1 (S.D. Ohio Apr. 19, 2018), the §1292(b) motion was ***unopposed***, as the "plaintiff's counsel strongly believe[d] that the [withheld] documents '***confirm*** not only the breach of contract allegations' but also support plaintiff's claim of fraud." *Id.* That is literally the opposite of the circumstances presented here, where Plaintiffs oppose FirstEnergy's motion and have consistently maintained that they have already built a strong case and

---

[3]     Even if an eventual direct appeal disagreed with the Court's Compulsion Order, which it should not, it is equally implausible that such a finding would result in a new trial.  FirstEnergy's confession, as well as all the other evidence Plaintiffs have amassed and will gather once the Court lifts the current discovery stay, will provide the requisite "'fair assurance, . . . that the judgment was not substantially swayed by'" the Court's Compulsion Order. *Appalachian Reg'l Healthcare, Inc. v. U.S. Nursing Corp.*, 68 F.4th 324, 334 (6th Cir. 2023) (alteration in original).

- 14 -

where FirstEnergy has already disclosed major components of its internal investigation and ***confirmed its central role in the underlying criminal conspiracy***.[4]

Accordingly, FirstEnergy has failed to satisfy §1292(b)'s first or third requirements.

## B. The Court's Compulsion Order Presents No Grounds for a Difference of Opinion

Considering FirstEnergy's failure to satisfy the first or third requirements, the Court need not consider the second: whether there are substantial grounds for a difference of opinion. *See, e.g.*, *Martin*, 2007 WL 9733710, at *2. Nevertheless, for sake of completeness and to emphasize the dearth of any merit to FirstEnergy's motion, Plaintiffs address this second requirement.

### 1. FirstEnergy Fails to Cite a Single Case Supporting Its Demand to Revise 28 U.S.C. §1746

No court has ever held it to be an abuse of discretion to require the "true and correct" attestation that 28 U.S.C. §1746 expressly mandates, as such a holding would write that language out of the statute. FirstEnergy relegates to a footnote a recent Sixth Circuit decision that eviscerates its assertion that it is an abuse of discretion to refuse to overlook a declarant's failure to declare his declaration's contents to be true: "declaration[s must] 'comply' with [28 U.S.C. §]1746." FirstEnergy's Appeal & Stay Mot., ECF 661-1 at PageID 14375 n.4. "Under that statute, [a declarant] must, ***at the very least***, (1) sign the declaration, (2) ***declare its contents as true***, (3) swear under the penalty of perjury, ***and*** (4) provide a date." *Milczak v. Gen. Motors, LLC*, _ F.4th _, 2024

---

[4] FirstEnergy's reliance on *Coleman v. Sterling*, 2012 WL 12952831 (S.D. Cal. Feb. 21, 2012), is similarly misplaced. *Coleman* was a wrongful termination case in which the defendants admitted no wrongdoing and the plaintiffs claimed that the entire plan to wrongfully terminate them ***began*** at a meeting that was ***the subject*** of the privilege ruling. *Coleman*, No. 09-CV-1594 W (BGS), ECF 137 at PageID 3417 (S.D. Cal. July 18, 2011). Here, FirstEnergy has confessed its criminal wrongdoing and the ruling concerns events that ***post-date*** the alleged fraud. In addition to being over 12 years old and from outside the Circuit, *Coleman* is completely inapt factually.

WL 2287687, at *3 (6th Cir. May 21, 2024).[5]  Relegating *Milczak* to a footnote doesn't change the Sixth Circuit's unequivocal holding that a truth attestation is one of four things a declarant "must" do "***at the very least***."  Therefore, this Court's ruling presents no grounds for difference of opinion, let alone the requisite ***substantial*** grounds.  28 U.S.C. §1292(b).

## 2. FirstEnergy Mischaracterizes the Underlying Orders and the Applicable Standards

FirstEnergy represents the Court's holding regarding work product protections as supposedly not applying such protections if the work product happens to be later used to make business decisions.  FirstEnergy's Appeal & Stay Mot., ECF 661-1 at PageID 14376.  In fact, the Court explicitly applied the correct standard:  determining if the materials sought were made "because of" litigation, *i.e.*, whether they "would have been prepared in substantially the same manner" regardless of litigation.  Court's Compulsion Order, ECF 653 at PageID 14266.  Likewise, FirstEnergy represents that the Special Master deployed a "hindsight-based approach to determining the purpose of an internal investigation."  FirstEnergy's Appeal & Stay Mot., ECF 661-1 at PageID 14379.  Again, this is demonstrably inaccurate.  The Special Master explicitly held that "Plaintiffs present[ed] an analytic chain that firmly and predominantly grounds the early investigation in the business necessity and human resources/public relations arena."  Special Master's Compulsion Order, ECF 571 at PageID 12384 (citing Movants' Compel Reply, ECF 529 at PageID 11437-38, 11440).  That analytic chain ***began*** with FirstEnergy's most pressing need for an investigation: to appease PwC and obtain its approval for FirstEnergy's mandatory SEC Form 10-Q filing.  Movants' Compel Reply, ECF 529 at PageID at 11437.  That need ***predated*** the internal investigation.

---

[5]    Because a non-perjury statute that could be used to punish false statements in federal proceedings (*e.g.*, 18 U.S.C. §1001), the truth attestation requirement is more important than swearing under penalty of perjury.  As the Special Master rightly pointed out, without the truth attestation, upon being taken to task regarding the accuracy of a statement, someone could claim they were simply declaring what they believe, disbelieve, etc., rather than declaring something they knew to be true.

- 16 -

Likewise, the analytic chain included "FirstEnergy['s] acknowledg[ment]" that "the [government's affidavit] suggested that a high-level FirstEnergy officer and senior executive were members of a criminal enterprise." *Id*. at 11440 (citing Compel Opp., ECF 510 at PageID 10910). "Even its sole declarant doesn't aver that this 'alone' was not a sufficient 'impetus' for the Squire investigations, as well as the Jones Day investigation." *Id*. Again, the government's affidavit, which triggered this business purpose, ***predated*** the internal investigation.

FirstEnergy similarly represents that it "is aware of no case supporting th[e] proposition" that "an internal investigation's 'predominant purpose must be legal for the privilege to apply.'" In fact, there are many cases that so hold. FirstEnergy's Appeal & Stay Mot., ECF 661-1 at PageID 14382. *See, e.g.*, *Alomari v. Ohio Dep't of Pub. Safety*, 626 F. App'x 558, 570 (6th Cir. 2015) ("When a communication involves both legal and non-legal matters, we 'consider whether the predominant purpose of the communication is to render or solicit legal advice.'") (quoting *In re Cnty. of Erie*, 473 F.3d 413, 420 (2d Cir. 2007)). Just last year, the Supreme Court dismissed an "improvidently granted" certiorari petition after oral argument, which left in place the very predominant purpose test, as applied by the Ninth Circuit:

> During the January 9, 2023 oral argument, Justice Sonia Sotomayor noted that "the vast majority of states use the primary purpose test," and Justice Elena Kagan noted that no federal appeals court until 2014 had used a different standard. Justice Kagan also asked the lawyer representing the unnamed law firm to comment on "the ancient legal principle of 'if it ain't broke, don't fix it.'" Two weeks later, on January 23, 2023, the Supreme Court issued an unsigned, one-sentence Order dismissing the case, stating that certiorari was improvidently granted. As a result, there is no change to the status quo – the test used to evaluate whether "dual purpose" communications can properly be withheld as privilege varies by jurisdiction with most states and Circuits that have addressed this issue applying the "primary purpose" test.

*Never Mind: Supreme Court Dismisses Attorney-Client Privilege Case After Oral Argument*, Foley Hoag (Jan 24, 2023), https://foleyhoag.com/news-and-insights/publications/alerts-and-updates/2023/january/never-mind-supreme-court-dismisses-attorney-client-privilege-case-after-oral-argument/.

- 17 -

The bottom line here is that FirstEnergy simply failed to carry its burden, and no court has ever held otherwise regarding a proponent who failed to identify any particular document(s) or information for the court to consider, failed to submit anything for *in camera* review, failed to submit a privilege log, and failed to submit a valid declaration, affidavit, or deposition testimony. FirstEnergy's failure is glaring.  For example, FirstEnergy contends that the Court's Compulsion Order would "provid[e] FirstEnergy's adversaries insights into its attorneys' factual and legal analyses of the issues in this litigation – including those of Jones Day, which has served as counsel to FirstEnergy in this very action." FirstEnergy's Appeal & Stay Mot., ECF 661-1 at PageID 14373. Yet, FirstEnergy cites no evidence whatsoever to support this assertion, which is unsubstantiated and should be disregarded – the reality is that FirstEnergy failed to establish the existence of ***any*** "factual and legal analyses" beyond those it has already disclosed in this litigation.[6]

## C.    No Justification for a Third Stay

Because FirstEnergy's motion does not present a close call regarding the appealability of the Court's Compulsion Order, and we are close to entering the fifth year of this litigation, there is no justification to impose what would be a third stay of discovery in this matter.  FirstEnergy's attempt to mitigate its total failure to carry its burden here with a finding from an administrative proceeding to which Plaintiffs were not parties, based on undisclosed arguments and evidence, and concerning unidentified materials that FirstEnergy never submitted for the Special Master's consideration

---

[6]    The very cases from this Circuit that FirstEnergy cites confirm its failure here.  *See, e.g.*, *Decker v. Chubb Nat'l Ins. Co.*, 2015 WL 5954584, at *4-*7 (S.D. Ohio Oct. 14, 2015) (the defendants submitted multiple documents for court's *in camera* review; court found privilege waiver as to documents for which the defendants failed to "specifically assert[] the [privilege]), *report and recommendation adopted*, 2015 WL 6872937 (S.D. Ohio Nov. 9, 2015); *Wilson v. Russo*, 2022 WL 911271, at *4 (N.D. Ohio Mar. 29, 2022) (defendants submitted a valid sworn affidavit from the lawyer who retained consultant in anticipation of litigation) (*see Wilson*, No. 3:20-CV-2498, ECF 35-1 (N.D. Ohio Dec. 3, 2021)); *Mia. Valley Fair Hous. Ctr. Inc. v. Metro Dev. LLC*, 2017 WL 10980458, at *2 (S.D. Ohio May 16, 2017) (the plaintiff's CEO's own deposition testimony provided sufficient "record evidence" to support the defendants' work product assertion).

- 18 -

(FirstEnergy's Appeal & Stay Mot., ECF 661-1 at PageID 8588-89) fails.  FirstEnergy also fails to cite a single case in which a court declined to certify a case for interlocutory appeal, only to stay discovery pending a threatened mandamus petition.  *See, e.g.*, *Marinkovic v. Hazelwood*, 2023 WL 3276248, at *2 (N.D. Ohio May 5, 2023) ("Simply stated, a stay is unnecessary and will needlessly delay a matter that [has] been pending for nearly three years."), *appeal dismissed*, 2023 WL 5207954 (6th Cir. June 6, 2023); *Morgantown Mach. & Hydraulics of Ohio, Inc. v. Am. Piping Prods., Inc.*, 2016 WL 3555431, at *4-*5 (N.D. Ohio June 30, 2016) ("even assuming that the first two elements [of §1292(b)] are met, plaintiffs cannot satisfy the third element and, therefore, an interlocutory appeal should not be permitted"; "plaintiffs' request to continue the stay of transfer is also denied and the stay issued on February 25, 2016 is lifted").

FirstEnergy's apocalyptic warning about hampering "the ability of every company to investigate wrongdoing and engage in full and frank communications with their attorneys" absent a stay is not well-taken, as the Court's Compulsion Order strikes no new ground.  FirstEnergy's Appeal & Stay Mot., ECF 661-1 at PageID 14387-88.  Companies have always conducted investigations knowing there would be no protections if they conduct an investigation primarily for business purposes, extensively disclose the most critical aspects of the investigation (including all facts and their attorneys' mental impressions and opinions), use the investigation as a bargaining chip with the government leading to a detailed confession, and fail to present any valid evidence to support any later assertions of privilege or work product protection.

## V.    CONCLUSION

Based on the foregoing, as well as the voluminous record in this matter, Plaintiffs respectfully request that the Court deny FirstEnergy's motion in its entirety.

DATED:  May 31, 2024                             Respectfully submitted,

                                              s/ Joseph F. Murray
                                         JOSEPH F. MURRAY

- 19 -

4893-5098-2083.v1

MURRAY MURPHY MOUL + BASIL LLP
JOSEPH F. MURRAY, Trial Attorney (0063373)
1114 Dublin Road
Columbus, OH 43215
Telephone: 614/488-0400
614/488-0401 (fax)
murray@mmmb.com

Liaison Counsel

ROBBINS GELLER RUDMAN
    & DOWD LLP
DARREN J. ROBBINS (*pro hac vice*)
MARK SOLOMON (*pro hac vice*)
JASON A. FORGE (*pro hac vice*)
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
darrenr@rgrdlaw.com
marks@rgrdlaw.com
jforge@rgrdlaw.com

Class Counsel

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing was filed electronically on May 31, 2024.  Notice of this filing will be sent to all electronically registered parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

*/s/ Joseph F. Murray*
Joseph F. Murray (0063373)

4893-5098-2083.v1